Number 2430754, Guidry v. LA Dept of Public Safety Thank you, Judge Jones, and may it please the court. This is a sad case, and the state doesn't shy away from that. But a prison official's duty under the Eighth Amendment is only to ensure reasonable safety, which incorporates due regard for the unenviable task of keeping dangerous men safe in custody. That standard reflects a human element, as prisoners often use ordinary objects in surprise attacks. And the law reflects that sad truism, as not every injury, including one as tragic as Mr. Cotton's death, translates into constitutional liability for prison officials responsible for the inmate's safety. To the best of our ability, we understand this case as raising supervisory liability claims against Ward and Goodwin for the failure to protect, for inadequate medical care, and for the failure to train. There are multiple ways for this court to affirm, but the most straightforward is Plaintiff's failure to establish supervisory liability for Ward and Goodwin, which disposes of all three claims at once. Merits-wise, Plaintiff has failed to establish any constitutional violation, which is how the district court ruled in this case, and I'm happy to walk through the analysis for each of the claims. However you see it, Ward and Goodwin is entitled to qualified immunity, and the district court was right to grant summary judgment. I'll start with the lack of supervisory liability. The warden was not directly involved in this incident or in Cotton's medical care, so liability can attach to him only under a theory of supervisory liability. But plaintiffs failed to bring forward any evidence to support supervisory liability, so the analysis can and should end there. The court could also affirm for a lack of a constitutional violation on all three claims. I will start with the failure to protect. At bottom, plaintiffs are asking this court to turn a longstanding commonplace security choice of allowing inmates to use padlocks to secure their property into a constitutional violation. But Farmer sets that test, and Justice Souter, who authored Farmer, later confirmed himself in Lakin that permitting padlocks, even when there is knowledge of prior attacks, falls well short of a constitutional violation under the Eighth Amendment. Every circuit court to address this issue has held the same. Plaintiffs were thus required to first show a substantial risk of serious harm and then meet the exceedingly high burden of proving deliberate indifference. And Farmer reminds us of two very important points that underscore this case. First, not every prisoner injury becomes a constitutional case. And second, officials who act reasonably are not liable even if a harm ultimately occurs. Here, there was no substantial risk of serious harm. Farmer explains that substantial means something objectively intolerable, and generally this requires a longstanding and pervasive risk of harm that requires more than isolated events or the possibility of harm. Measured against that standard, the padlock theory doesn't pass Farmer's first step. Relevant case law is clear that issuing prisoners padlocks to secure their personal belongings does not create a serious harm. Start with Lakin. Again, Justice Souter, who wrote Farmer, concluded that allowing inmates to have padlocks was not unconstitutional. That's because the risk, even with prior incidents and a high spike of six assaults in a single year, was simply too insubstantial to state a claim. Our numbers bear that out. Padlock incidents were infrequent. Our numbers are about 1.6 per year on average, which is less than the Lakin average and includes seven years of data after the incident and multiple years of zero attacks. That's exactly the kind of record that Justice Souter himself says is too insubstantial to satisfy his own Farmer's step one. The Third Circuit reached the same conclusion in Beaton with one or two per year, and the Leon and Francisco case from Louisiana, as well as a slew of other district court cases from across the country, have found similar records too thin to support a constitutional claim. However you draw the line, this record sits well on the insubstantial side and fails Farmer's first step. That's where the case could end. That means we never even reach deliberate indifference. But regardless, the record demonstrates that Warden Goodwin was not deliberately indifferent. This court knows that deliberate indifference is an extremely high standard to meet. It is akin to subjective recklessness. It cannot be inferred, even from gross negligence, as Judge Seward pointed out, and it requires facts clearly evincing wanton actions. Nothing in the record supports that allegation. And more than that, Farmer is explicitly clear. Officials who reasonably respond to a substantial risk of serious harm cannot be liable. And here, allowing padlocks is a reasoned security judgment, and there is no evidence for the contrary. Padlocks and lockers secure property. They reduce theft, they lower tensions, and that's a legitimate, peniological interest to which this court should defer. Our expert agrees and has explained that the correctional center's approach mirrors common practice and professional guidelines, and almost every court to address this issue has agreed that padlocks do serve a legitimate purpose with the primary function of securing private property. Plaintiffs bring no evidence to the contrary. They do not offer their own expert. They offer no analysis, and they have no proof that Warden Goodwin knew of an objectively intolerable risk and ignored it. At the end of the day, this claim fails three times over. There's no supervisory theory to reach the warden, there's no risk of serious harm under Farmer's first step, and there's no deliberate indifference in light of the reasonable, widely accepted policy. The district court got that claim right, and this court should affirm. I'll turn now to inadequate medical care. This one is very straightforward. The inadequate medical care claim must fail from the start. Cotton's medical care was performed by Nurse Benson and Dr. Fuller. Warden Goodwin was simply not involved. The plaintiffs never affirmatively linked the warden to Cotton's medical treatment or identify any policy or failure to train that caused the alleged constitutional violation. And my friend on the other side just said that they did not allege any policy about medical care. That ends the individual capacity claim, but I'm happy to walk through it on the merits if you would like that as well. If not, I will turn to the failure to train claim. Plaintiffs have nothing to support this claim. They merely state that constitutional violations have occurred, the failure to protect, and the inadequate medical care, and that those must have been due to a failure to train. Time and again, this court has said that such generalized statements are not enough for a failure to train claim. They've identified no training defect, and as Judge Jones explained in Roberts v. City of Shreveport, plaintiffs must allege with specificity how the training was inadequate in relation to the tasks the officers performed. Here, the plaintiffs don't do that. They just said that there was something wrong with the training and called it sufficient. At the end of the day, plaintiffs sued the wrong parties. They never pleaded supervisory liability against Warden Goodwin, and on the merits, they have offered no evidence of any constitutional violation, much less of deliberate indifference. Warden Goodwin is entitled to qualified immunity on all three claims, and the judgment should be affirmed. I'm happy to cede my time if the court has no questions. I have a question. Yes, ma'am. The defendants were sued, well, the warden was sued in his personal and official capacity, correct? Yes, Judge Ramirez. Did the district court address the official capacity claims? No, the district court did not explicitly address the official capacity claims outside of the context of the failure to train claims, but officials in the state are not persons under Section 1983, so those claims must fail against the warden in his official capacity. How do we handle that, since the district court didn't address it? Your Honor, that's based in sovereign immunity, and so you can raise it at any point in time. But we are a court of review, not first view. Your Honor, I believe that because it's rooted in sovereign immunity, that's immunity from suit, and so you could address it. But even if you don't address it, they still fail on the merits of all three claims, and so that could be an easier, more straightforward path. So I hear you saying that we should rule on the issue as opposed to remanding it for the district court to do that. Yes, Your Honor, because I think the underlying lack of any constitutional violations is dispositive no matter what. Thank you. There are no further questions. I'll cede my time. I guess not. Thank you, ma'am. OK, Mr. Harville. Judge Ramirez, to address your last question that you addressed to State's counsel, I would ask that the matter be affirmed, conditionally affirmed, reversed, however you choose to do it. If you do affirm it to conditionally affirm it, remand to the district court to take care of that last claim so there's not a federal claim hanging around. But I do not think it's something that your court as a court of error should address initially in this appeal. You're saying we should affirm to district court? Well, I'm sorry, Your Honor. I'm just trying to make sure I heard you right. Yeah. Are you saying we should affirm to district court? No, Your Honor. That was a misstatement on my part. Regardless of how Your Honor's rule, I think that the matter of the official liability should be remanded. I certainly don't think you should affirm, Your Honor. And thank you for pointing. I don't want to make sure. Thank you for pointing. Your Honor, I do not. And thank you for clarifying that. I apologize. Your Honors, I think that what is important here is to establish what this court can establish is a static versus a dynamic view of what is deliberate indifference. If Your Honors affirm this matter, you are affirming a static version of deliberate indifference, in which policymakers can simply put the right things into the record, and as long as more than two people aren't attacked in a year, or four or five on average, or four or five in a year, they're fine. That's not what Farmer did. That's not what is done by Domino. They are giving and ceding freedom for the decision makers in these peniological situations to make reasoned decisions. That's the dynamic portion of Farmer and Domino that I would like you to enforce. And in this case, there are genuine issues of material fact regarding that dynamic issue. We didn't just allege the number of attacks. We alleged, and I pointed out, contrast. You have one decision maker who says, we deliberate it. You have another who said, we didn't deliberate in the face of these. And Judge Jones, I think that's what's important and vital in this case. It's that lack of deliberation in the face of four. It's the dynamic application of the principles in Farmer and Domino. They don't have that. The same thing in the depositions in this case with the lack of medical care. From a static standpoint, they say all the right things. It's not that hard to do. You're taught how to do it. You read your honor's cases, and you make the words, and you say the words. But look in those notes. Look in the action. Take a dynamic look at that. That's what they did in this case. That's what was presented for the summary judgment record. That's what should be allowed to go to a jury. Ladies and gentlemen of the jury, we agree. If you accept everything that they say and everything that the defense presents in this case, then they're right. Under Farmer, under Domino, they're entitled to qualified immunity, and we lose. But if you look at what we pointed out, if you look at the evidence in this case, the disputed facts in this case, and apply those in a dynamic manner and test those actions versus the words in the policy, you see that there was deliberate indifference. How do you get a, I mean, you know, even assuming you were correct, how does that set up defying qualified immunity? In other words, no reasonable warden would have recognized a sufficiently serious threat from four padlock attacks. And Judge Jones, I appreciate that point, and I think that's the key here. A reasonable warden, though, would have had deliberation, would have had a policy, would have had something to talk about. And Lieutenant Cottrell says it didn't happen. Lieutenant Warden Goodwin in this case says, I don't know we're being sued. If you don't know that you're being sued for someone being beaten with a lock, is that really making a reasoned decision? I think it's untruthful, honestly, but I think that that is a fact that should be given to a jury. Do you really? Is him not knowing about a lawsuit, ladies and gentlemen of the jury? Is Lieutenant Cottrell saying they didn't talk about it? Is that a reasoned deliberation? Is that a policy? It's not. It is what you have in that medical. We don't care. We're not going to have more than four of you beaten to death in a year, so we don't care. We'll just let it happen, and we'll get summary judgment. That's the difference in the dynamic. We pointed out more than just the allegations. We showed the inconsistencies. Please give us a chance to show those inconsistencies, those contested facts, to a jury. Thank you, Your Honors. I appreciate your time. All right. Thank you.